## Morris Addison v. State

No. 26,748. February 3, 1954.
Rehearing Denied April 7, 1954.

*Henry E. Doyle, Francis L. Williams,* Houston, and *Kenneth R. Lamkin,* Austin, for the appellant.

*Bob Long,* District Attorney, *Sam Kimberlin, Jr.,* Assistant District Attorney, Austin, and *Wesley Dice,* State's Attorney, Austin, for the state.

DAVIDSON, Judge

Murder is the offense; the punishment, death.

It is appellant's contention that he has been denied due process of law because members of the Negro race, of which he is one, were discriminated against because of their race in the selection, organization, and empaneling of the grand jury which returned the indictment upon which this conviction is predicated.

This contention is embraced in two parts: (a) racial discrimination in the selection of the jury commission which selected the grand jury, and (b) racial discrimination in the selection of the grand jury.

There is an absence of any evidence of express or intentional discrimination against the Negro race, as such, or of this appellant because he is a Negro. To establish that the claimed discrimination has been shown, appellant relies upon facts which he contends constructively establish discrimination.

The statutory law of this state governing the selection and empaneling of grand juries (Chap. 1, Title 7, V. A. C. C. P.) is not, within itself, unfair, and it is capable of being carried out without racial discrimination. Smith v. Texas, 311 U. S. 128, 85 L. Ed. 84, 61 S. Ct. 164. If discrimination occurs, then, it is only in the administration of the statutes.

We consider, first, the claim that there was discrimination in the selection of the jury commission which selected the grand jury.

The jury commission is selected by the district judge, only. Art. 333, V. A. C. C. P.

The act of the judge in selecting the jury commissioners has no direct connection with the grand jury that is ultimately selected. If no irregularity or discrimination exists or is practiced by the jury commissioners in selecting the grand jury panel, then the individual who is indicted by that grand jury has not been injured; nor does he have just ground to complain of the appointment of the jury commissioners.

An irregularly or illegally drawn jury commission may, in the performance of its duties, select an entirely regular, proper, and legal grand jury, in which event constitutional or statutory mandates relative thereto have been satisfied.

If appellant has been here discriminated against by reason of race, as he claims, such discrimination must rest in the act of the jury commissioners and not in the act of the judge in selecting the jury commissioners.

These were the views expressed upon the subject in McMurrin v. State, 156 Texas Cr. R. 434, 239 S.W. 2d 632, and Morris v. State, 158 Texas Cr. R. 516, 251 S.W. 2d 731. The Supreme Court of the United States denied certiorari in each of these cases. 342 U. S. 874, 96 L. Ed. 657, 72 S. Ct. 115, and 345 U. S. 951, 97 L. Ed. 1374, 73 S. Ct. 863.

So then, appellant's contention here rests upon whether discrimination was practiced against members of the Negro race by the jury commissioners in the selection of the grand jury which returned the instant indictment.

The evidence adduced as to the allegation of race discrimination in the organization of the grand jury must be looked to in determining the correctness of the trial court's ruling. Being only a pleading, the allegation of the motion to quash cannot be considered as evidence or as established fact.

There is no suggestion that the jury commissioners discriminated, intentionally or purposely, against members of the Negro race in selecting the grand jury panel out of which the grand jury was selected. There is no evidence as to the manner of selection and racial composition of previous grand juries. There is no proof which would render applicable the so-called rule of long, continuous, or systematic exclusion or inclusion of members of the Negro race for grand jury service within the contemplation of the holding of the Supreme Court of the United States in the cases of Norris v. Alabama, 294 U. S. 587, 79 L. Ed. 1074, 55 S. Ct. 579; Pierre v. Lousiana, 306 U. S. 354, 83 L. Ed. 757, 59 S. Ct. 536; Smith v. Texas, 311 U. S. 128, 85 L. Ed. 84, 61 S. Ct. 164; Hill v. Texas, 316 U. S. 400, 86 L. Ed. 1559, 62 S. Ct. 1159; and Cassell v. Texas, 339 U. S. 282, 94 L. Ed. 839, 70 S. Ct. 629.

The inference to be drawn from the failure of the appellant to show the racial composition of previous grand juries is, of necessity, that the facts would not be of benefit to him here.

There is no escape from the conclusion, then, that appellant's contention must stand upon the proposition that, in the performance of their duty in the selection of the grand jury, the jury commissioners failed to fairly familiarize themselves with the qualifications of the eligible jurors of the county without regard to race or color. Cassell v. Texas, supra.

The rule to which reference is made is stated in the Cassell case as follows:

"When the commissioners were appointed as judicial administrative officials, it was their duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color. They did not do so here, and the result has been racial discrimination."

As supporting that conclusion, the court quoted from the Hill case, supra, as follows:

" 'Discrimination can arise from the action of commissioners who exclude all negroes whom they do not know to be qualified and who neither know nor seek to learn whether there are in fact any qualified to serve. In such a case, discrimination necessarily results where there are qualified negroes available for jury service. With the large number of colored male residents of the county who are literate, and in the absence of any countervailing testimony, there is no room for inference that there are not among them householders of good moral character, who can read and write, qualified and available for grand jury service.' "

The conclusion of the court that racial discrimination was there shown was expressed as follows:

"The statements of the jury commissioners that they chose only whom they knew, and that they knew no eligible Negroes in an area where Negroes made up so large a proportion of the population, prove the intentional exclusion that is discrimination in violation of petitioner's constitutional rights."

The converse of the rule is equally true, which is that if, in the performance of their duty to select panel of sixteen names from which the grand jury of twelve is ultimately selected, the jury commissioners familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race or color and make their selections upon that basis and

information, it cannot be said that race discrimination has been practiced in the selection of a grand jury so drawn.

The instant facts must be looked to for a determination of the question thus presented. Those facts are shown, primarily, by the testimony of the five jury commissioners.

It is beneficial to note the names and qualifications of the men who composed the jury commission: Commissioner Jones, a teacher in the University of Texas, with considerable experience as a jury commissioner and as a grand juror, resided in the west part of the city. Commissioner Stumberg, a distinguished professor of law at the University of Texas, was well acquainted in and with the residents of the populous university area. Commissioner Stewart, part owner and general manager of a radio station in Austin which programs almost exclusively to that area of East Austin where Negro and Spanish-speaking people reside, had opportunity to know and become acquainted with the people of that area. Commissioner Bray, a pharmacist and business man of the city of Austin having a place of business in downtown Austin, had many business acquaintances. Commissioner Crockett, a general contractor who employed many people—trained and untrained—in his business, resided in South Austin.

It seems apparent that in selecting the jury commissioners the trial judge not only complied with the mandate of Art. 333, V. A. C. C. P., that the jury commissioners be residents of different portions of the county, but he also selected men of high standing, integrity, and capabilities.

Each of the five jury commissioners testified upon the hearing of the motion to quash.

Certain facts stand out in the testimony of these commissioners. It appears that before entering upon the actual selection of the sixteen names of the grand jury panel, each jury commissioner suggested the names of several individuals of his acquaintance who he deemed possessed the qualifications of a grand juror. The location of the residence of each individual was taken into consideration. The qualifications for grand jury service of those persons so nominated were discussed and reviewed by the commissioners as a whole. The undisputed proof shows that, in nominating those persons, no reference was made in any case as to whether the nominee was a white man or a Negro. Such was also true when the final selection of the grand jury panel was made.

Indeed, only Commissioner Stewart, who made the nomination, knew, until after he had been selected by the commissioners as a member of the grand jury that returned the indictment in this case, that Dr. Mitchell, a resident of the populous Negro area of East Austin who served upon and was a member of the grand jury that returned the indictment in this case, was a Negro. The proof shows that Dr. Mitchell, a dentist, was selected as a member of the grand jury panel because he was an outstanding citizen of the East Austin community and possessed all the qualifications of a grand juror.

The testimony of the jury commissioners leads, inevitably, to but one conclusion, and that is that the men comprising the jury commission made an honest and sincere effort to select for grand jury service men possessing the qualifications of grand jurors, without reference to race or color, and that they included or excluded no man from the grand jury because of his race.

If such facts evidence racial discrimination in the selection of a grand jury, then we are at a loss to know how a grand jury can be obtained in this state under our present and existing statutory scheme.

Appellant was not discriminated against, because of his race, in the selection of the grand jury which returned the indictment against him.

Prior to the selection of the jury trying this case, appellant made a motion to quash the special venire from which the jury was to be selected, because he had not had one day's service of a copy of the officer's return showing the names of those summoned upon the special venire, as contemplated by Arts. 600 and 601, V. A. C. C. P.

Upon presentation of the motion, the proper service was made upon appellant, and the trial of the case was postponed until after the expiration of the one day required by the statutes mentioned.

Appellant's contention, now, is that the one day's time for study of the list of the special veniremen and of the officer's return was insufficient as a matter of law and, especially, as a matter of fact in the instant case.

With this contention we cannot agree. The statutes mentioned are a part of our original code. Throughout the years they have not been changed. We find no valid reason to overturn them now.

The undisputed evidence shows that appellant, in the execution of a prior threat, without justification or excuse, stabbed the deceased six times with a knife, one of which knife stabs penetrated the heart.

We are unable to agree with appellant that the facts do not warrant his conviction of murder upon malice aforethought.

No reversible error appearing, the judgment is affirmed.

Opinion approved by the court.

## ON MOTION FOR REHEARING

MORRISON, Judge.

Appellant disagrees with the opinion expressed originally that he had failed to prove the racial composition of previous grand juries. He calls attention to the evidence of the witnesses Shields and Dennis. We shall discuss their testimony.

Mr. Dennis testified that he was a retired school teacher, that he had been a resident of Austin for 41 years, and he was then asked the following:

"Q. To your knowledge, prior to January 20, 1953, do you know whether or not there has been more than one Negro to serve on a Grand Jury in Travis County? A. Well, I don't know that there has been. I would not say that there have been more than one Negro on a Grand Jury.

"Q. Would you say that you knew there were Grand Juries that had one on them? A. Yes, I knew of Grand Juries that had one.

"Q. But to your own knowledge, do you know of any that had any more than one on it? A. No."

Mr. Shields testified, without giving his vocation, that he had been a resident of Austin for 26 years and was then asked the following:

"Q. Of your own knowledge, Mr. Shields, do you know of any Negro more than one who has ever served on a Grand Jury in Travis County up to January 30, 1953? A. No, sir, I don't.

"Q. But you do know of some Grand Juries on which one has served? A. Yes, sir.

"Q. But do you know of any Grand Jury where more than one has served? A. No."

It will be seen from this testimony that neither witness was shown to have any intimate knowledge of the racial composition of the grand jury panel from which the grand juries were chosen. Neither witness professes to know anything about the personnel of such panels. For all this record discloses, there may have been several Negroes on the panels through the years. Be that as it may, we do not find this evidence sufficient to show such a systematic inclusion or exclusion of members of the Negro race upon prior grand juries as would warrant the conclusion that members of the Negro race were discriminated against in the selection and empanelling of the instant grand jury.

Remaining convinced that we properly disposed of this cause originally, appellant's motion for rehearing is overruled.