G. B. HAMMAN V. STATE.

No. 29,792. June 11, 1958.

*Fowler Roberts,* Dallas, for appellant.

*Henry Wade,* Criminal District Attorney, *William F. Alexander* and *A. D. Jim Bowie,* Assistants District Attorney, Dallas, and *Leon Douglas,* State's Attorney, Austin, for the state.

BELCHER, Judge.

The offense is embezzlement; the punishment, ten years.

The second count of the indictment, upon which the case was submitted to the jury, alleged that appellant "was an officer, agent servant and employee of Physicians Life and Accident Insurance Company of America" and that he embezzled, misapplied and converted to his own use $225,000 belonging to said company, which was under his care by virtue of such employment as such officer, agent, servant and employee.

The court, in his charge, required the jury to find that appellant was the agent of said company; that he received the money belonging to said company in the course of his employment; and that he embezzled, misapplied or converted it to his own use, without the consent of his principal or employer.

The facts are thus stated in the state's brief:

"In 1955, Physicians Investment Corporation was incorporated to be the parent company of Physicians Life and Accident Insurance Company of America. The principal incorporators and promoters were appellant Hamman, Parnell, McGhee, and Valentine. These promoters executed notes, secured by deeds of trust on real estate, individually, totaling $225,000.00. These notes and deeds of trust were assigned to the Physicians Investment Corporation. Then Physicians Investment Corporation borrowed $225,000.00 from the Empire State Bank of Dallas, Texas, using the notes as security for the loan. The $225,000.00 borrowed from the Empire Bank was deposited to the account of Physicians Life Company as part of its original capital. As soon

as Physicians Life Company was chartered with the $225,000.00, public sale of stock in said Life Company was commenced, with Physicians Investment Company acting as its agent and broker for such sales. On incorporation, Physicians Life Company furnished the money to pay the $225,000.00 note of Physicians Investment Company at Empire Bank, and the notes and deeds of trust securing the Investment Company loan were assigned to the Life Company. Shortly thereafter the Life Company promoters were advised that a Life Company could not hold the notes of its own directors, and the notes were assigned out to two banks; First National Bank of Dallas, Texas, paying for one $75,000.00 note of Parnell and the Mercantile National Bank taking the other $150,000.00 of notes, including the $50,000.00 note of appellant Hamman."

During the year 1955 stock was sold at $11.00 per share under prospectus representing that the net proceeds would be used to fulfil an expanded business program and other stock at $14.00 per share, it being represented that such stock was original common stock of said company.

It was the state's theory, supported by the evidence, that: "Before the end of 1955, appellant and his co-promoters caused the Life Company to transfer sufficient funds from the sale of its primary stock to the public to the Physicians Investment Company, which Investment Company used the money to pay off the personal notes of the promoters, including appellant Hamman. These notes were extinguished by the payment and returned to the makers. To account for the transferal out of the Life Company funds to pay the promoters' notes, the stock record books were altered and back dated to make it appear that the primary capital stock sold to the public was mistakenly entered as such, but was secondary stock belonging to the promoters which had been sold to the public, and the proceeds of such stock sales credited to the individual promoter, including appellant Hamman. In other words, the stock records were altered to make it appear that the certificate stubs and records so altered had been in reality secondary sales of personally held secondary stock belonging to the promoters, whereas in truth and in fact the stock sold was primary capital stock belonging to the Life Company and had been sold to the public on the representation that it was primary stock sold for the purpose of increasing the capital structure of the Life Company.

"From incorporation to the end of the period of the transactions complained of in the indictment appellant G. B. Hamman

was an officer; to-wit: Secretary of the Life Company, a director, and an employee drawing a salary from said company. The money used to pay Hamman's personal note was money belonging to the victim Life Company. Appellant Hamman had the care, custody, possession, and control of said money at the time it was used to pay his personal note.

"Appellant was an officer, agent, servant, and employee of the Physicians Life Company. Victim company was a corporation incorporated under the laws of the State of Texas. The money charged to have been embezzled was from funds received from the sale of primary capital stock of the said Life Company, which funds belonged to the Life Company. Said funds were taken by appellant without the consent of the Life Company. The money so embezzled had come into possession of appellant as officer, agent, servant, and employee of the said victim Life Company."

Appellant filed application for suspended sentence and testified. The state's brief correctly stating: "The appellant testified in his own behalf, admitting all acts charged in the indictment and proved by the state, but claimed lack of any fraudulent, unlawful, or wrongful intent in connection with any of the facts proved by the state."

Appellant's theory differed from that of the state only in that he disclaimed any fraudulent intent and contended that he did not want to sell his stock and did so only because the 50,000 shares of original stock offered by prospectus was over subscribed and the corporation did not care to sell more of its stock, but did desire to retire the notes of appellant and the other directors with proceeds from the sale of a part of their stock. He testified that the books were altered so as to correctly reflect what happened, and that the entire transaction was conducted under advice of counsel and certified public accountants.

Appellant excepted to the court's charge for failure to instruct the jury affirmatively on his defense of good faith; lack of fraudulent intent; belief in good faith that he and his codefendants were authorized to deal with the money involved as was done; his good faith and belief that his actions were legal, and his defense that if he did anything wrong it was the result of his being misled by the advice of the attorneys and certified public accountants.

None of these defensive matters were submitted to the jury,

the only submission from the standpoint of the defendant being the converse of the submission from the state's standpoint: "Unless you so find, or if you have a reasonable doubt thereof, you will acquit the defendant and say by your verdict 'not guilty'."

The court erred in omitting to affirmatively submit appellant's defensive theory to the jury.

On re-direct examination appellant was asked: "Mr. Hamman, in all your dealings with Physicians Life and Accident Insurance Company of America, tell the court and jury whether you ever intentionally took any money, or knowingly took any money belonging to that company?"

The state's objection, that it was self-serving; called for an opinion and was not based on any facts, was sustained.

We are aware of no case where a defendant has been denied the right to answer such a question over such an objection. The ruling was erroneous and was prejudicial to the rights of the defendant.

A number of character witnesses were called by appellant who, having testified to their long acquaintance with him and to their acquaintance with his general reputation in the community where he resided as a peaceable and law abiding citizen, testified that such reputation was good.

These witnesses were then asked whether they knew appellant's general reputation in the community where he resided for honesty and fair dealings, but the witnesses were not permitted to answer the question.

The witness Moore, called by the defense, testified that he had known appellant between 25 and 30 years; and knew his general reputation in the community where he resides as being a peaceable and law abiding citizen, and it was good.

This witness was then asked "Mr. Moore, do you know his general reputation in the community where he resides for honesty and fair dealings?" and he answered "Yes, sir."

The state then objected without stating any ground, and the objection was sustained. Appellant's counsel urged that it was a

very material question and an issue in the case, and the jury being retired, the following transpired.

"Q. Now, Mr. Moore, is that reputation good or bad? A. It is good.

"Q. For honesty and fair dealings? A. Yes, sir.

"The Court: That part about honesty is all right.

"Mr. Alexander (for the state) : Your honor, his traits of character are not in issue on an application for suspended sentence.

"Mr. Roberts (defense counsel) : Do I understand the court to rule that his reputation for honesty, that my inquiry with reference to his reputation for honesty is all right?

"The Court: Yes, Sir. I think for honesty, and for truth and veracity, peaceable and law-abiding citizen.

"Mr. Roberts: Note our exception."

The jury then returned to the jury box and the following occurred.

"Q. (By Mr. Roberts) Now, Mr. Moore, I'll ask you if you know the reputation of, general reputation of G. B. Hamman in the community where he resides for honesty?

"Mr. Alexander: Now we object to that, your Honor. It is not the statutory question.

"The Court: I will sustain the objection, and let you have a bill on that, Mr. Roberts, because of the facts that we had a few minutes ago.

"Mr. Roberts: Note our exception. That's all.

"Mr. Alexander: No questions. (Witness excused) ."

Tom Fisher gave like testimony as a character witness and upon being asked "Do you know, Mr. Fisher, his general reputation in the community where he resides for honesty?" The state's objection was "Now, we object to that your honor, for the reason

that no predicate has been laid and it doesn't include the statutory question."

The court sustained this objection and it was agreed that the answer of the witness might be reflected in the bill.

Robert Allman an acquaintance of some 32 years, and a former roommate of appellant, testified in a similar manner to his good reputation as a peaceable and law abiding citizen, but was not permitted to answer the question "Mr. Allman, do you know the general reputation of Mr. G. B. Hamman in the community where he resides for honesty and fair dealings?" This time the state's objection, which was sustained, was "We object to that, Your Honor, for the reason that no proper predicate has been laid. The question is in incomplete form and brings up an issue, brings up a trait of character which is not properly proveable under the application for a suspended sentence." Again it was agreed what the answer of the witness would have been.

Similar questions as to the witnesses' knowledge of the general reputation of appellant in the community where he resides for honesty and fair dealings were propounded to other witnesses who had testified to his good reputation as a peaceable and law abiding citizen, and in each case the state's objection was sustained. Some of these objections were as follows:

"We object to that, Your Honor, for the reason that it attempts to put in evidence a trait of character not in issue in this case; and does not include a proper predicate for the question."
"* * * for the reason that it is an improper question, incomplete, and attempts to put traits of character in evidence which are not in issue under the application for a suspended sentence."

The formal bills reflect that the witnesses would each have answered the question in the affirmative and, if permitted, would have testified that such general reputation for honesty and fair dealings was good.

The trial court was in error in these rulings. The state concedes, in its brief, that appellant was entitled to prove his reputation for honesty and fair dealings, and this court so held in Cockrell v. State, 131 Texas Cr. Rep. 3, 95 S.W. 2d 408.

"It is a well recognized rule in Texas and in most jurisdictions that the accused, in order to exculpate himself, may introduce evidence of his general good character in respect to the

particular trait involved in the offense charged. See Pine v. State, 134 Texas Cr. Rep. 396, 115 S.W. 2d 918; Cockrell v. State, 131 Texas Cr. Rep. 3, 95 S.W. 2d 408; Browder v. State, 30 Texas Crim. App. 614, 18 S.W. 197. See also Wharton on Criminal Evidence, 10th Ed., Vol. 1, p. 230, Sec. 67." Bara v. State, 141 Texas Cr. Rep. 7, 147 S.W. 2d 250.

A typical question which the witness was not permitted to answer was: "Do you know the general reputation of Mr. G. B. Hamman in the community where he resides for honesty and fair dealings?"

This was itself but a predicate question and was not subject to valid objection that a proper predicate had not been laid.

The state calls attention to a distinction existing between reputation for honesty and fair dealings, admissible on the question of guilt or innocence which reputation is limited to the period prior to the commission of the offense, and general reputation for being a peaceable and law abiding citizen, admissible on the issue of suspended sentence, reputation at the time of trial being the thing at issue.

While the distinction is recognized, we fail to see its applicability where, as here, the defendant seeks to prove a good reputation both for honesty and fair dealings and as a peaceable and law abiding citizen, and there is nothing to suggest that his reputation may have improved in either regard between the time of the alleged offense and the trial.

A different question would arise where a reputation for honesty and fair dealings good at the time of the offense was attacked as bad after the offense had been committed. Smith v. State, 94 Texas Cr. Rep. 633, 252 S.W. 562.

We observe that reputation as a peaceable and law abiding citizen is admissible not only in suspended sentence cases, but on the issue of guilt. Graham v. State, 29 Texas App. 31, 13 S.W. 1013.

Nor do we agree that the reputation testimony should have been excluded because the predicate question did not include "among the people who know him best."

Upon another trial the defendant should be permitted to testify before the jury that he did not intentionally or know-

ingly take any money belonging to the company; should be permitted to introduce evidence showing his good reputation for honesty and fair dealings, and his claim of innocent intent should be submitted to the jury.

The indictment herein was returned May 23, 1957, by a grand jury impaneled in Criminal District Court No. 2 of Dallas County.

Said grand jury was impaneled in said court on April 1, 1957, and on the same day a grand jury had been impaneled in Criminal District Court of Dallas County, Texas.

We are aware of no constitutional or statutory provision which would prevent the impaneling of a grand jury in one district court while another grand jury is serving in a different district court in the same county. Farrar v. State, 162 Texas Cr. Rep. 136, 277 S.W. 2d 114.

The trial court did not err in overruling appellant's motion to quash the indictment.

The judgment is reversed and the cause remanded.

Opinion approved by the Court.