UNITED STATES of America ex rel.
Emanuel JOHNSON, Jr.

v.

Alfred T. RUNDLE, Superintendent.

Misc. No. 3600.

United States District Court
E. D. Pennsylvania.

Jan. 31, 1968.

David C. Harrison, Philadelphia, Pa., for relator.

Henry T. Crocker, Asst. Dist. Atty., County of Montgomery, Norristown, Pa., for respondent.

## OPINION

LUONGO, District Judge.

In a trial before a judge without a jury in the State court, relator, Emanuel Johnson, was convicted on charges of rape, robbery and assault and battery with intent to ravish. He was sentenced to imprisonment for three consecutive terms of three to ten years each. In this habeas corpus petition he seeks to have the convictions set aside because they resulted from alleged violations of his constitutional rights. The violations charged are that:

1. the police were permitted to testify to alleged admissions made by Johnson at a time when he had not been advised of his constitutional rights;

2. evidence obtained as a result of an illegal arrest was used against him; and

3. the convictions so lacked evidentiary support as to constitute a denial of due process.

State remedies have been exhausted.[1]

1. *Failure of police to inform relator of constitutional rights.*

In the state habeas proceedings Johnson was afforded a full and fair evidentiary hearing on the charge that the police failed to warn him of the right to counsel and of the right to remain silent. There is ample support for the state court's finding that the police did inform Johnson of the right to counsel and that, at the time he made the statements, he was aware that he had the right to remain silent. No hearing was required, therefore, and none was conducted by this court on that charge. Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

2. *Evidence obtained as a result of illegal arrest.*

Johnson contends that he was illegally arrested and that the convictions were based on evidence[2] obtained as a result of, and, therefore, tainted by the illegal arrest. Wong Sun v. United States, 371

---

1. Post trial motions denied, Commonwealth v. Johnson, 30 Pa.Dist. & Co.2d 780 (1961); affirmed, 201 Pa.Super. 448, 193 A.2d 833 (1963).

    Petition for writ of habeas corpus denied, Commonwealth ex rel. Johnson v. Myers, C. P. Montgomery County, October Term, 1965, No. 65–9009; affirmed per curiam, 207 Pa.Super. 732, 217 A.2d 767 (1965); petition for allocatur denied, 209 Pa.Super. xlviii, 813 Oct. Term, 1967, No. 341A Misc. Docket 14, Supreme Court of Pennsylvania.

2. Testimony of the results of a voice identification line-up conducted on the evening of April 25, 1961, following Johnson's arrest, and testimony of alleged admissions made by Johnson after he was informed that his voice had been identified by several victims, to the effect that "If I did it to them, I must have done it a hundred times."

U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

■ The Commonwealth argues that Johnson has waived the right to complain of the use of such evidence because no objection was made to its admission at the criminal trial. The question of waiver of a constitutional right is a federal question, United States ex rel. Gockley v. Myers, 378 F.2d 398 (3d Cir. 1967), and if this arrest was unlawful, the question of waiver will necessarily come into play. Since the state court did not inquire into the propriety of the arrest, there was no reliable state court record on which this court could judge whether the arrest violated relator's constitutional rights. A hearing was, therefore, held here to determine whether the arrest[3] was lawfully made (a) pursuant to a validly issued warrant of arrest, or (b) on probable cause for arrest without a warrant.

(a) *Validity of the warrant.*

■ On April 19, 1961, Captain Harner of the Cheltenham Township police appeared before a Justice of the Peace and swore out three complaints for the arrest of Johnson. The complaints have been carefully examined. They contain nothing more than a recital of the acts allegedly committed upon each of three Springfield Township assault victims. There is a complete absence of factual basis for cause to believe that Johnson had committed the acts. Standing alone, the complaints were inadequate as a basis for issuance of the arrest warrant. Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958). At the hearing before me, the Commonwealth attempted to establish that more information was given to the Justice of the Peace than was contained in the complaints, but the attempt failed. Neither Captain Harner nor the Justice of the

Peace had any recollection that any information other than that contained in the complaints was presented. There was, therefore, inadequate factual basis for a finding of probable cause by the judicial officer and the warrant of arrest issued by him was invalid. Johnson's arrest connot be sustained as pursuant to a valid warrant.

(b) *Arrest without a warrant.*

■ Notwithstanding the invalidity of the warrant, the arrest may nevertheless be sustained if the police had probable cause to make an arrest without a warrant. Giordenello v. United States, supra; Hagans v. United States, 315 F.2d 67 (5th Cir. 1963); DiBella v. United States, 284 F.2d 897 (2d Cir. 1960); United States v. Russian, 192 F.Supp. 183 (D.Conn.1961). Pennsylvania permits police officers to make an arrest without a warrant if they have reasonable grounds to believe that the accused has committed a felony. Commonwealth ex rel. McNeair v. Rundle, 416 Pa. 301, 206 A.2d 329 (1964); Commonwealth ex rel. Spencer v. Ashe, 364 Pa. 442, 71 A.2d 799 (1950), cert. denied, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1390 (1950).

■ The constitutional validity of a warrantless arrest depends upon

" * * * whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense. Brinegar v. United States, 338 U.S. 160, 175–176 [69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879]; Henry v. United States, 361 U.S. 98, 102 [80 S.Ct. 168, 171, 4 L.Ed.2d 134]." Beck v. State of Ohio, 379 U.S. 89, 91,

---

3. Relator's charges of violation of constitutional rights all depend upon his claim that he was illegally arrested. The court was advised of some possible difficulty in obtaining the testimony of Johnson's criminal trial counsel and it was deemed advisable under the circumstances to postpone the question of waiver to a further hearing to be held in the event the arrest was found to be illegal.

85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964).

On April 25, 1961, the day the arrest was made, the Philadelphia police, from their own investigation and from information furnished to them by other police sources, had in their possession this information:

Following the assault of two women in Springfield Township in 1959, a check of the license number of an automobile observed following the bus ridden by one of the victims just before she was attacked, revealed that the vehicle was registered in the name of Johnson's stepmother. Johnson was questioned about the incident but was released because of lack of evidence.

Another assault was committed in Springfield Township on May 12, 1960, in much the same manner and in the same general area as the 1959 incidents. All of the Springfield assaults were committed within a few blocks of the same bus route originating at Broad Street and Olney Avenue, Philadelphia.

On July 8, 1960, a young woman was raped in Lower Merion Township after alighting from a public conveyance. Upon learning of that attack, the Springfield Township police reported their suspicions about Johnson to the Lower Merion police, who thereupon took the Lower Merion victim to a bus depot in Philadelphia where Johnson was employed as a driver. The Lower Merion victim made a tentative visual identification of Johnson as her attacker. On July 20, 1960, the Lower Merion police arrested Johnson and took him into custody. The Lower Merion victim again visually identified Johnson as her assailant, but, because the identification was deemed not sufficiently positive to obtain a conviction, Johnson was released. The officer in charge of the Lower Merion case reported the results of his investigation to both the Springfield and the Philadelphia police.

On April 18, 1961, a woman was attacked in a section of Philadelphia not far removed from the area in which the Springfield Township assaults had been committed. Police investigation revealed that a short time prior to that incident Johnson had been the subject of a "suspicious car stop" in that vicinity. On April 20, 1961, Johnson was picked up as a suspect. He requested and was granted permission to communicate with an attorney. After he did so, he was released, but he volunteered to return the next day for a lie detector test. When he arrived at the police station on April 21, 1961, one of the Springfield Township victims, who was present at the police station by prearrangement between the Philadelphia and the Springfield Township police, heard his voice and identified it as that of the man who had attacked her. Johnson was permitted to leave the police station that day. He was arrested at his home on April 25, 1961 by the Philadelphia police, armed with the earlier mentioned warrant obtained by Captain Harner.

■ Judged by the test of Beck v. State of Ohio, supra, Johnson's arrest by the Philadelphia police on April 25, 1961 was valid. The voice identification on April 21 would have been sufficient, in itself, to warrant a prudent man believing that Johnson had committed the assault on the Springfield Township victim who made the identification. In addition, the Philadelphia police had the benefit of the other bits and pieces of information, reviewed above, gathered by the police of the three communities linking Johnson to the series of similar assaults. The combined information was sufficient to give the police probable cause to believe that Johnson had committed the offenses under investigation. Since there was no urgency, a warrant of arrest should have been obtained by the Philadelphia police, but their failure to do so is explainable by their reasonable belief that the Springfield Township arrest warrant had been validly issued. Under the circumstances, the arrest without a warrant was lawful. Since the arrest was lawful, relator's "tainted fruit" argument cannot be sustained.

3. *Violation of due process.*

■ Johnson contends that the conviction is so lacking in evidentiary sup-

port as to constitute a denial of due process of law. The question presented by such a charge, in the words of Thompson v. City of Louisville, 362 U.S. 199, 80 S.Ct. 624, 625, 4 L.Ed.2d 654 (1960), is whether

> " * * * the charges * * * were so totally devoid of evidentiary support as to render [the] conviction unconstitutional under the Due Process Clause of the Fourteenth Amendment. Decision of this question turns not on the sufficiency of the evidence, but on whether [the] conviction rests upon any evidence at all."

Substantially all of the evidence against Johnson consisted of testimony of the identification of Johnson's voice by the prosecuting witnesses from a voice line-up conducted on the evening of April 25, 1961, following his arrest, and of alleged admissions made by Johnson after he was informed that his voice had been identified.

The due process argument is in two parts. The first part is that *all* of the evidence against Johnson was the tainted fruit of an illegal arrest, consequently there was no competent evidence to support the convictions. That part of the argument has been disposed of by the finding that the arrest was lawful.

 The second part of the due process argument is that the voice line-up "produced completely useless information —all but one of the rapes occurred more than a year before the line-up." (Relator's brief, p. 14). That argument, as well as the argument as to the equivocal nature of the alleged admission, attacked the *weight*, not the competence of such evidence. Identification of a person's voice is competent evidence; the weight

of it is a matter for the fact finder. Wigmore on Evidence, 3d ed., Vol. 3, p. 711; 7 A.L.R. 911; Commonwealth v. Saunders, 386 Pa. 149, 125 A.2d 442 (1956). The procedures[4] employed by the police in conducting the voice line-up were such as to produce reasonably trustworthy identification evidence, so there is no constitutional infirmity in that regard. Cf. United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). The evidence as to voice identification and as to alleged admissions made by Johnson thereafter was some evidence of guilt. That is all that due process requires.

The petition will be denied.

---

4. On the evening of April 25, 1961 the victims of the similar assaults were brought to the police station to determine whether they could identify their assailant by the sound of his voice. A screen was placed between the victims and the four men participating in the voice line-up. Each man was given the same phrase to speak. After all repeated that phrase they changed positions in the line-up and were given another phrase to speak. The position of each man on each round was duly noted by the number of his position in the line-up. In all, five rounds were conducted, Johnson being given his choice of position for the final round. The victims were asked to identify the voice of the assailant by number after each phrase was spoken by the men. In each instance the identification by number corresponded to Johnson's position in the line-up.