Lonnie LEE, Appellant,

v.

The STATE of Texas, Appellee.

No. 42787.

Court of Criminal Appeals of Texas.

May 6, 1970.

Rehearing Denied June 24, 1970.

W. E. Barron, Joe Falco, Jr., and James Bond, Navasota, Joe J. Newman, Houston (On Appeal Only), for appellant.

James F. Warren, Dist. Atty., and Robert D. Brewton, County Atty., Navasota, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is rape; the punishment, 60 years.

■ We first address ourselves to the motion to quash the jury panel on the grounds that black people had been excluded from the jury commission who selected the panel. The motion was filed on the day of the trial, and apparently neither the state nor the appellant was prepared. In such cases caution should be the watchword, and a delay should have been requested. But, in viewing this case as it comes to us, we must determine if the appellant has shown that discrimination permeated the selection of this panel by reason of exclusion. In Addison v. State, 160 Tex.Cr.R. 1, 271 S.W.2d 947, we said, "If appellant has been here discriminated against by reason of his race, as he claims, such discrimination must rest in the act of the jury commissioners and not in the act of the judge in selecting the jury commissioners."

Unlike Davis v. State, Tex.Cr.App., 374 S.W.2d 242, upon which appellant relies, in the case at bar, appellant called only three witnesses. As to the grand jury and its panel, the sheriff testified that he did not recall a black man having been selected on the jury commission. He believed that there were "some" on the grand jury panel, but did not believe that there were "any" on the grand jury. He stated that there were "eight of the hundred" on the jury panel "here today."

The district clerk testified that he did not remember any black man serving on the jury commission; however, he recognized only the name of one black man on the grand jury panel, and five or six on the panel from which this jury was drawn.

The county judge testified only as to his opinion of the percentage of black people in the county.

This is not such a hearing as we had before us in Davis v. State, supra, and we cannot, on these facts, hold that discrimination has been shown.

■ Appellant's second ground of error is that the witness Paul Hill was not permitted to answer the question about appellant's "character as to his wife and family." There is an absence of any showing in the record as to what the witness would have answered if he had been permitted to do so. In Deams v. State, 159 Tex.Cr.R. 496, 265 S.W.2d 96, we pointed out the procedure to be employed in the event of an adverse ruling by the court. It should be noted that in Hamman v. State, 166 Tex.Cr.R. 349, 314 S.W.2d 301, upon which appellant relies, that the jury were retired, and the sought for answer was preserved in the record.

■ Appellant's third ground of error is that the court should have instructed a verdict of not guilty, because of the alleged inconclusiveness of the prosecutrix's identification of appellant as being her assailant. His principal contention is that prosecutrix testified that appellant was wearing an army fatigue jacket, whereas appellant and his witnesses testified that he had not

served in the army and owned no such jacket. Clearly the jury were authorized to disbelieve appellant's claim and accept the prosecutrix's in-court identification of appellant. Her mistake, if it was, as to the make of the automobile which her assailant drove can have little probative value.

Ground number four relates to proof that appellant was subjected to a lie detector test prior to dictating his confession. There is evidence by both the state and appellant as to the taking of a lie detector test at Austin prior to his confessing. At the place in the testimony pointed out by appellant, the court sustained the objection and instructed the jury not to consider the same. Appellant was evidently satisfied with such ruling, because he asked for nothing further. In Nichols v. State, Tex.Cr.App., 378 S.W.2d 335, relied upon by appellant a motion for mistrial was made.

It should be further noted that in Webb v. State, 163 Tex.Cr.R. 391, 291 S.W.2d 331, we said " * * * the use of the lie detector test as a means of interrogation does not violate accused's constitutional rights or render the written confession thereafter made involuntary. * * *"

■ Appellant was arrested one month after the rape in question at approximately 9:00 p. m. and carried to jail. There he was warned by a justice of the peace. Thereafter, some questioning occurred, but no confession was taken. The next morning, after appellant had been left alone in a cell for four hours, his attorney came to jail, and conferred with him. Appellant was warned again, and then was taken to Austin. The trip was made with the knowledge of his counsel. In Austin, appellant was again warned of his rights, and then he dictated a written confession. On the way home from Austin, the officers discovered that the confession had been lost. Then, appellant was taken to the police station in Elgin where he made the written confession which was introduced in evidence. Prior to giving this last confession,

Ranger Werner, who took the confession, warned appellant as follows:

"Q. Could I ask you whether or not this was the statement you took from him on March the 10th at Elgin, Texas?

"A. Yes, sir, this is the same statement.

"Q. All right, before you took that statement, did you warn him that he had a right to counsel?

"A. Gave him a verbal warning that he had a right to counsel.

"Q. Did you tell him also that he could refuse to give a statement if he wanted to?

"A. Yes, sir.

"Q. Did you tell him that he could quit the examination and stop it any time he wanted to?

"A. Yes, sir.

"Q. Did you tell him that—that if he is unable to employ a lawyer that he would be hired one?

"A. Yes, sir.

"Q. And, in other words, what you gave him is what is commonly known as the Statutory Warning?

"A. Right, sir.

"Q. And tell him that any statement that was taken against him, could be used in evidence against him at the trial?

"A. Yes, sir.

"Q. Did he knowingly and intelligently and voluntarily waive these rights and make this statement?

"A. Yes, sir."

The court was shown that the confession was essentially the same as the one taken in Austin (subsequently lost). The appellant testified:

"Q. Did anybody ever ask you any questions before Judge Wickey gave you your warning about your rights?

"A. At the jail house.

"Q. Right?

"A. No, sir, not right then.

"Q. Did anybody ask any question about the crime or anything?

"A. No, sir.

"Q. Did Judge Wickey come in and tell you, that you had a right to have a lawyer?

"A. Yes, sir.

"Q. Did he tell you that you had a right to remain silent?

"A. Yes, sir.

"Q. Did he tell you that you had a right to stop the interrogation or questions at any time?

"A. Yes, sir.

"Q. Did he tell you that you had a right, or if you didn't have any money, they would appoint you a lawyer?

"A. Yes, sir."

The issue of voluntariness of the confession was submitted to the jury.

Since appellant had counseled with his attorney, had been properly warned in line with the requirements of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed. 2d 694, and Articles 15.17 and 38.22, Vernon's Ann.C.C.P., and testified on cross examination that he had been warned of his rights in Austin by Ranger Werner, we decline under the evidence here presented to hold the confession inadmissible as a matter of law.

Appellant's seventh ground of error relates to the arrest. Both the state and appellant overlooked the rule discussed by this court in Head v. State, 160 Tex.Cr.R. 42, 267 S.W.2d 419, wherein we said, " * * * it is the detention not the arrest which this Court and the Supreme Court of the United States hold under some circumstances vitiates the confession." See also, Onion and White, Texas Code of Criminal Procedure—Its 1965–1967 Changes Affecting Corporation Courts and Police Practices, 10 So.Tex.L.J. 92 (1968). We have discussed the question of detention heretofore.

Prior to the search of appellant's automobile the appellant was warned by the justice of the peace, and he executed a written consent to search his automobile which was witnessed by the justice.

By supplemental brief, appellant questions the lineup identification of prosecutrix. There was no lineup as the term is commonly used. After his arrest, the prosecutrix came to the jail and identified appellant's voice. It is not shown that appellant was required to say anything or any particular words which he had said during the commission of the crime as was discussed by this Court in Beachem v. State, 144 Tex.Cr.R. 272, 162 S.W.2d 706. The prosecutrix merely heard him talk. In Gilbert v. State of California, 383 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, the Supreme Court said, "a mere handwriting exemplar, in contrast to the content of what is written, like the *voice* or body itself, is an identifying physical characteristic outside its protection," (Fifth Amendment).[1] The witness thereafter positively identified appellant.

Finding no reversible error, the judgment is affirmed.

### ON APPELLANT'S MOTION FOR RE-HEARING

ONION, Judge.

The punishment assessed by the jury in this rape conviction was 28 years. The opinion on original submission was in error in reflecting the punishment assessed as 60 years.

---

1. U. S. ex rel. Johnson v. Rundle, D.C., 280 F.Supp. 453.

On rehearing appellant again complains of the admission into evidence of his written extrajudicial confession particularly contending he was deprived of counsel during interrogation.

After appellant's arrest about 9 p.m. he was taken to jail. He was then taken before a magistrate and warned in accordance with Article 15.17, V.A.C.C.P. It was the undisputed testimony of Sheriff Johnson that appellant at such time waived his rights and expressly stated he did not want an attorney. During the interrogation when the appellant indicated he desired to call an attorney the questioning ceased. The sheriff did tell the appellant not to call the attorney at that early morning hour since it would make the attorney "mad," but there was no further interrogation and no statement was taken. Several hours later the appellant was permitted to call the particular attorney he indicated he desired to have. The attorney immediately came to the jail and conferred with the appellant, advising him, according to appellant's testimony, that he did not have to take a lie detector test and recommending that he not do so. It appears to have been appellant's desire to take such a test. Prior to the trip to Austin he was taken before a second magistrate and again warned in accordance with Article 15.17, supra, and informed he did not have to take a lie detector test. Such requirement is not a statutory one, but a requirement of the Texas Department of Public Safety before such agency will administer a lie detector or polygraph examination.

After the test in Austin the appellant was warned in accordance with Article 38.-22, V.A.C.C.P., by an officer who after a waiver of the right to counsel, etc., took from the appellant a written confession.

On the return to Grimes County it was discovered at Elgin that such confession had been lost. There another confession was taken after new warnings and a waiver. It was this confession which was introduced into evidence. Even the appellant acknowledged it was the same as the statement given in Austin.

If it be appellant's contention that despite the warnings and waiver law enforcement officers were forever barred from future interrogation after appellant's statement that he desired to call an attorney, we cannot agree. See Hill v. State, Tex. Cr.App., 429 S.W.2d 481.

Miranda,[1] of course, teaches that even though an accused has been warned and has waived his rights, he may terminate the custodial interrogation at any point and reassert his privilege against self incrimination and his right to counsel.

The Court in Miranda said:

"Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. If the individual states that he wants an attorney, the interrogation must cease until an attorney is present. At that time, the individual must have an opportunity to confer with the attorney and to have him present during any subsequent question. If the individual cannot obtain an attorney and he indicates that he wants one before speaking to police, they must respect his decision to remain silent."

In Hill v. State, supra, this Court said:

"We do not interpret that portion of Miranda to mean that under no circum-

---

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

stances can there ever be any further interrogation, particularly where the prosecution has sustained its heavy burden of demonstrating that the accused knowingly and intelligently waived his privilege against self incrimination and his right to retained and appointed counsel. Only recently this Court in Gunter v. State, 421 S.W.2d 657, held admissible, under the circumstances there presented, a confession taken in absence of and without notification of accused's court appointed counsel, in view of the clear cut affirmative waiver."

We think Hill is applicable here. There is no evidence that the 34 year old appellant was threatened, tricked or cajoled into a waiver and no showing of lengthy interrogation or incommunicado incarceration which would mitigate against the finding of a valid waiver.

■ Caution, of course, is urged on law enforcement agencies in taking statements when counsel, either retained or appointed, has entered the picture. Here, however, in view of the clear cut affirmative waiver of counsel by the appellant prior to the taking of the confession and other surrounding circumstances, we remain convinced the confession was properly admitted into evidence. See Gunter v. State, Tex.Cr.App., 421 S.W.2d 657 (concurring opinion).

Appellant also vigorously complains of the disposition of his ground of error #4 on original submission. A re-examination of such contention reveals that appellant complained *only* that evidence he was subjected to a lie detector test was erroneously admitted.[2] He correctly points out, however, that he did make a motion for a mistrial following the admission of such testimony and that the statement in the opinion on original submission to the contrary is erroneous.

The matter arose in the following manner during the direct examination of Sheriff Johnson, who related that the morning following appellant's arrest he was taken before a second magistrate for another warning.

"Q. What was that warning, were you there when he gave the warning?

"A. Yes, sir. It was a warning that he didn't have to take a lie detector—

"Q. —just—Shh—shh—shhh—

"BY THE COURT:

"The jury will not consider that question or any answer, I don't think he answered it, but they will not consider it for any purpose, and it's withdrawn from the jury all together."

Counsel then approached the bench, the jury was removed, and a motion for mistrial was made and overruled.

■ It has been the consistent holding of this Court that evidence of the results of a lie detector or polygraph test is not admissible on behalf of either the State or the defendant. Renesto v. State, 452 S.W.2d 498; Hart v. State, 447 S.W.2d 944; Wall v. State, 417 S.W.2d 59; Nichols v. State, 378 S.W.2d 335; Placker v. State, 171 Tex.Cr.R. 406, 350 S.W.2d 546; Davis v. State, 165 Tex.Cr.R. 456, 308 S.W.2d 880; Stockwell v. State, 164 Tex.Cr.R. 656, 301 S.W.2d 669; Peterson v. State, 157 Tex.Cr.R. 255, 247 S.W.2d 110, rehearing denied 157 Tex.Cr.R. 255, 248 S.W.2d 130.

■ In Paredes v. State, Tex.Cr.App., 368 S.W.2d 620, no error was shown in the nonresponsive answer of an officer to the effect that he had taken the accused "to a polygraph machine," where the record did not indicate a test had been given, or if given, the results thereof. Further, in Ro-

2. Appellant's ground of error #4 reads as follows:
"The court committed material error highly prejudicial to the rights of the defendant in permitting evidence to the effect that the defendant was subjected to a lie detector test or polygraph test as such testimony and any result thereof or purported results thereof is inadmiss*a*ble as a matter of law."

per v. State, Tex.Cr.App., 375 S.W.2d 454, no reversible error was shown in a statement of an officer that the accused had been subjected to a polygraph test where the statement was unresponsive and the test result was not revealed and the jury was instructed to disregard.

While the question asked in the case at bar was somewhat double barreled, it does not appear to have been designed to elicit the answer given which we conclude was unresponsive. The court quickly on its motion instructed the jury to disregard the partial answer. The result of such test was not mentioned.

In light of the authorities cited above and the circumstances presented, we perceive no reversible error. We therefore remained convinced that ground of error #4 is without merit.

Appellant's motion for rehearing is overruled.