**Clifton Larry JANNISE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–88–089 CR.**

Court of Appeals of Texas, Beaumont.

March 28, 1990.

Rehearing Denied April 11, 1990.

Petition for Discretionary Review May 10, 1990.

J.C. Zbranek, Richard Baker, Zbranek & Hight, Liberty, for appellant.

Michael Little, Dist. Atty., Jerry E. Andress, Asst. Dist. Atty., Liberty, for the State.

## OPINION ON MOTION FOR REHEARING

BROOKSHIRE, Justice.

Our previous opinion filed February 14, 1990, is withdrawn. This opinion is substituted therefor.

A jury convicted Appellant of aggravated sexual assault of a child and assessed punishment at ten years' confinement in the Texas Department of Corrections. Appellant urges eight points of error.

The first point of error alleges error in the admission of so-called extraneous offenses. Appellant combines several different arguments under this point. He first complains of the admission of other acts between himself and eight year old C.C., the named complainant. He next complains about the girl's mother testifying to what she had been told by the child. He then complains of the admission of acts between himself and A.H., a nine year old girl. Finally, he complains of the State's arguments at both stages of the trial in connection with the extraneous offenses.

The indictment alleged two counts of sexual assault occurring on or about November 29, 1985. The State introduced a voluntary statement of Appellant wherein he admitted (1) touching the breasts and inserting his finger in the vagina of C.C. on November 27, (2) placing his finger in the vagina and rectum of C.C. on November 29, and (3) rubbing his body against hers on November 30. C.C. testified that Appellant (1) touched her vagina and breasts on "night one", (2) touched her breasts and inserted his finger in her vagina on "night two", (3) inserted his finger in her rectum on "night three" and (4) the next morning, day four, rubbed his body against hers. The State introduced another voluntary statement of Appellant wherein he admitted (1) rubbing the breasts and vagina (but denying any penetration) of A.H. on November 27, (2) attempting to rub A.H.'s vagina on November 28, and (3) rubbing the buttocks and attempting to rub the vagina of A.H. on November 29. A.H. testified that (1) on the "first night" she could not recall if Appellant touched her vagina, but witnessed Appellant touching C.C.'s vagina, (2) on a subsequent night Appellant tried to touch her vagina and she witnessed Appellant removing his fingers from C.C.'s vagina and (3) she could not recall any other instances.

■ *Battles v. State*, 63 Tex.Crim. 147, 140 S.W. 783 (1911) (opinion on rehearing) established an exception to the rule barring admission of extraneous offenses by a defendant to explain the charged act and view the act in light of the relationship between the defendant and the minor as well as to weight the plausibility of the child's accusations. This rule was reestablished in *Johns v. State*, 155 Tex.Crim. 503, 236 S.W.2d 820 (1951) and both cases were thoroughly analyzed and reaffirmed in *Boutwell v. State*, 719 S.W.2d 164 (Tex. Crim.App.1985). *See and compare Cruz v. State*, 737 S.W.2d 74 (Tex.App.—San Antonio 1987, no pet.). This continues to be the rule today, therefore evidence regarding additional sexual offenses involving C.C. were properly admitted.

■ This court in *Turner v. State*, 716 S.W.2d 569 (Tex.App.—Beaumont 1986), *rev'd on other grounds*, 754 S.W.2d 668 (Tex.Crim.App.1988) held that outcry testimony was admissible. In any event, the child testified to the acts *and Appellant's statement admitted most of the acts.* Therefore, if the outcry testimony was inadmissible, it was rendered harmless. We think, however, the outcry was admissible. *See Heckathorne v. State*, 697 S.W.2d 8 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd).

It is important to stress that Appellant made two voluntary statements. In one of the statements the Appellant admitted that the Complainant-victim C.C., along with her friend A.H., were both staying with the Appellant and his wife in a trailer.

Some additional, important details and narratives are below set forth. On November 27, 1985, at night, he entered the bedroom of the trailer where both of the very young girls were sleeping. He shut the bedroom door half-way. On this night he touched the breasts and stomach of C.C. and placed his hand on C.C.'s vagina. He then inserted one of his fingers inside C.C.'s vagina. This insertion lasted for about five minutes. Appellant left the bedroom. The next night, the day after Thanksgiving, he again placed his finger in the vagina of C.C. On the same night he placed his finger inside of C.C.'s rectum. On the next day, Saturday, he rubbed himself up and down against C.C. He declared that that was the last sexual activity he had with C.C.

■ A second voluntary statement exists in the record. It was taken concurrently with or shortly after the first statement. The objection to this second voluntary statement was that it was immaterial and irrelevant to any issue in the case; that it was merely inflammatory because it does not concern any of the allegations in the indictment or issues being tried. We do not agree. We think the actions of Appellant involving A.H. were *res gestae*. Further, Appellant objected that no predicate had been laid and that there was no showing that the issues involved in this case would permit introduction of these so-called extraneous matters. Finally, Appellant objected that it was not shown that the second statement was freely and voluntarily given.

In the second statement the Appellant swore that on the very same night of November 27, 1985, that A.H., a young girl, was staying with him and his wife in the trailer in Kennefick in the same bedroom with C.C. At the identical hour, about 10:30 p.m., the Appellant went into the bedroom where C.C. and A.H. were sleeping. He pulled down A.H.'s panties, rubbed her breasts and her vagina. The second night was Thanksgiving, a Thursday. Appellant went back inside the bedroom and again pulled A.H.'s covers down along with her panties. He tried to "play with" A.H. He rubbed her vagina. Then she woke up and he left. The last night, the night of the day after Thanksgiving, he went back into the same bedroom where A.H. was sleeping. Again he pulled A.H.'s panties down; he touched her buttocks; he tried to massage her vagina. A.H. turned away and pulled the covers up. These sexual assaults happened almost simultaneously in respect to C.C. and A.H. They were certainly *res gestae*. Offenses do not occur in a vacuum and the jury reasonably ought to have the benefit of the immediate,

intertwined, intermingled surrounding circumstances.

TEX.R.CRIM.EVID. 404(b) provides that evidence of other crimes, wrongs or acts may be admissible to demonstrate proof of motive, opportunity, intent, preparation or plan, knowledge, absence of mistake or absence of accident. Following a reasonable interpretation of Rule 404(b), in our opinion, this Rule 404(b) makes admissible the acts involving A.H. These sexual acts against C.C. and A.H. were so closely related, intertwined and intermingled that to attempt to separate them would be arbitrary and unrealistic. The jury is entitled to have at least a fairly complete narrative of the facts in order to reach and return a just verdict.

The plain language of Rule 403 shifts the focus somewhat from the test enunciated in *Williams v. State,* 662 S.W.2d 344 (Tex. Crim.App.1983). The approach under Rule 403 is to admit relevant evidence unless the probative value of the relevant evidence is *substantially* outweighed by the danger of unfair prejudice to the defendant.

We must first determine if the so-called extraneous offenses are relevant; and, then, we determine if their probative value was not *substantially outweighed* by unfair prejudice. TEX.R.CRIM.EVID. 403. This analysis is for the trial judge in the first instance and, absent a clear abuse of discretion, will not be disturbed on appeal. *Templin v. State,* 711 S.W.2d 30 (Tex.Crim. App.1986). See also *United States v. Jarabek,* 726 F.2d 889 (1st Cir.1984); *Pleasant v. State,* 755 S.W.2d 204 (Tex.App.—Houston [14th Dist.] 1988, no pet.); *Cole v. State,* 735 S.W.2d 686 (Tex.App.—Amarillo 1987, pet. granted).

Clearly, these acts were very relevant and importantly material to the issues in the case inasmuch as the indictment charged that the Appellant *knowingly and intentionally caused certain sexual acts to be committed against C.C., a child who was then younger than fourteen years of age.* One allegation charged the Appellant with the penetration of the female organ of C.C. A separate allegation *charged him with intentionally and knowingly caus-*

*ing a penetration of the anus of C.C., a child that was then younger than fourteen years of age.*

It is axiomatic that the State had the burden to prove each and every element of the offense beyond a reasonable doubt. The State proceeded to discharge this heavy burden. The acts involving A.H. (not the Complainant-victim) were relevant to show absence of mistake or accident on the part of Appellant. These acts negated any theory of accidental touch, rubbing or penetration. The acts against A.H. strongly tended to disprove mistake or accident. These matters were for the jury to weigh.

Of course, it could be argued that these matters were prejudicial to the Appellant; but realistically the whole case of the State is prejudicial against the Appellant. The State was endeavoring to obtain a conviction and discharge its onerous burden of proof.

While *Turner, supra,* conceded that each case involving so-called "extraneous acts" or "offenses" must be decided on an ad hoc basis, the revised wording of Rule 403 acts to discourage ad hoc review. The test is a determination of whether the trial court abused its discretion. We conclude that no unfair prejudice, confusion of the issues, or misleading of the jury occurred. Nor did undue delay or needless presentation of cumulative evidence take place. A review de novo would not be appropriate on appeal.

Nor could it be reasonably argued that the State was attempting to try the Appellant as a criminal generally. The offenses involving C.C. and A.H. all happened within a very brief period of time—about 60 or more hours—and the offenses were very similar in nature and all happened in one small bedroom of one small trailer in Liberty County.

From the record and the statements of the Appellant, these acts of sexual assault occurred either very soon after or very soon before the date set out in the indictment.

We point out that if because of the very short passage of time between the assaults

upon the Complainant, the assaults were not a "continuous transaction"; then it is obvious from the record that as to each evening or morning the joint molestation of the two girls lying in the same bedroom was *res gestae*. Thus, for example the assault on A.H. on Wednesday should be admissible to reveal a fairly complete narrative of the contemporaneous assault on the Complainant. The jury should not be hoodwinked.

■ The failure to include a limiting instruction in regards to the so-called extraneous offenses was not a reversible type of error. This is true because the evidence in the case and the confessions were so overwhelming that, under this record, a charge limiting a jury's consideration or use of the so-called extraneous offenses would not have affected the outcome of the trial. In addition, it was not reversible error for the reason that the purposes for which the offenses were admitted were numerous. The so-called extraneous offenses were admissible to prove the main issues in the case, such as mens rea, scienter and guilty knowledge, inter alia.

Evidence and testimony tending to contradict or disprove the Appellant's position and to make the child/complainant/victim's testimony more reasonably plausible were admissible. The jury cannot be expected to try cases in a vacuum. These offenses were concurrent in a realistic sense and probably simultaneous. These matters—being a special type of extraneous offenses—were used to show intent, inter alia. *See Hitchcock v. State*, 612 S.W.2d 930 (Tex.Crim.App.1981). In other words, these simultaneous offenses were admitted for a multitude and legion of purposes. No limiting instruction was necessary. *Wiggins v. State*, 778 S.W.2d 877 (Tex.App.—Dallas 1989, pet. ref'd).

■ The right to a "no-adverse-inference", concerning the fact that the defendant elected not to testify, is available to the defendant at the punishment stage. Upon a proper request from the defendant, a trial judge must instruct jurors that they may not and cannot draw any adverse inference from a defendant's failure to testify and this right not to testify continues beyond the guilt/punishment stage. *See and compare Beathard v. State*, 767 S.W.2d 423 (Tex.Crim.App.1989).

■ It is well settled that the Appellant's right against self-incrimination extends to the punishment phase of the trial. Hence, we perceive error occurred. The question now is to decide whether the error was reversible. It is probably an error of omission in the charge of the court. The "some harm" test is usually applied *when timely, proper objection is leveled to and against the court's charge*. *See and compare Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App.1985); *Rose v. State*, 752 S.W.2d 529 (Tex.Crim.App.1988).

Of course, the application of a state harmless error rule is purely a state question. *See and compare Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

In this case, the trial court had before it an application for probation and; hence, *the trial court could not know what would transpire during the whole of the punishment phase*. The Appellant could have elected to take the stand and testify. The relevant objection involved here may have been and probably was somewhat premature. But after the punishment phase testimony had been concluded, it was then clear that the Appellant had not testified. Hence, error was demonstrated by Appellant. Thus we order a limited remand as to punishment only. The most correct time, however, to object to a charge is after all the evidence is in and the punishment phase has been fully concluded.

■ Another point of error argues that error was committed in allowing some testimony before the jury concerning a polygraph test. The results of the test were not admitted. The prosecution proffered testimony that Appellant had given voluntary statements during the date of December 13, 1985. The State also elicited testimony that an investigator and the Appellant had gone to Houston earlier that day and they had been together since around 7:00 a.m. Then upon cross-examination the

Appellant's counsel elicited testimony that these two men met with an employee of the Texas Department of Public Safety. On redirect the investigator involved identified the DPS employee as a polygraph operator. This seemed inadvertent. The Appellant's counsel objected and at once moved for a mistrial. The trial court denied the motion. The trial judge strictly instructed the jury not to consider anything concerning the challenged question other than that to which the witness testified concerning the purpose of the trip. We deem the judge's instruction adequate to cure any error, if any error existed.

■ There was, however, further testimony concerning the polygraph test and its duration. The trial court ruled that this testimony was covered and governed by the rule of optional completeness, being TEX.R.CRIM.EVID. 107. We agree. *See and compare Lee v. State*, 455 S.W.2d 316 (Tex.Crim.App.1970); *Paredes v. State*, 368 S.W.2d 620 (Tex.Crim.App.1963).

■ Another point of error alleges reversible error in the trial court failing to grant a mistrial based upon prosecutorial misconduct. This point is based upon the failure of the State to furnish the victim's statement to Appellant prior to the trial. Appellant's complaint is that he was only furnished the statement at the conclusion of the victim's testimony and that it contained allegations of other sexual assaults by relatives and this was evidence favorable to the defense. Although not before us, Appellant had apparently filed a motion for the State to produce exculpatory and mitigating evidence; at least the prosecutor said he recalled such a motion. The State's position is that the other sexual assaults on C.C. are not exculpatory or mitigating evidence insofar as this Appellant is concerned. That, however, is not the rule. Reversible error occurs if a prosecutor actively, negligently or inadvertently fails to disclose evidence beneficial to the defense. *Means v. State*, 429 S.W.2d 490 (Tex.Crim.App.1968). This applies even if the evidence goes to the credibility of a witness. *Burkhalter v. State*, 493 S.W.2d 214, 218 (Tex.Crim.App.), *cert. denied*, 414

U.S. 1000, 94 S.Ct. 354, 38 L.Ed.2d 236 (1973). Furthermore, a prudent prosecutor will resolve doubtful questions in favor of disclosure. *United States v. Agurs*, 427 U.S. 97, 108, 96 S.Ct. 2392, 2399, 49 L.Ed.2d 342, 352 (1976). Here, the evidence should have been disclosed. Failure to disclose does not necessarily mean reversal. The "suppressed" evidence must be material to the defense, *Crutcher v. State*, 481 S.W.2d 113, 116 (Tex.Crim.App.1972) and the "suppression" of the evidence must have had an effect on the outcome of the trial. *Means, supra.* Arguably, the information was material. Certainly a prudent defense counsel would have investigated the other allegations to determine any pattern or evidence of "coaching". These other allegations were not inconsistent with Appellant's guilt, nor with the victim's position; therefore, we fail to perceive how the outcome would have been affected. *See Garcia v. State*, 704 S.W.2d 495 (Tex.App.—Corpus Christi 1986, no pet.). This point of error is overruled.

■ The sixth point of error urges error by the trial court in refusing to submit a lesser included offense charge. Appellant argues that the offenses of sexual assault of a child (nonaggravated) and indecency with a child should have been submitted to the jury. Appellant did not object concerning the latter; therefore, nothing is preserved for review on that complaint. The only difference between aggravated sexual assault of a child and sexual assault of a child is that, if the victim is under fourteen years of age, then it is aggravated. A defendant is entitled to a lesser offense only if it is raised by the evidence. Here, the undisputed evidence was that the child was under fourteen years of age. Clearly, C.C. was about eight years of age. The trial court was correct in only submitting the offense of aggravated sexual assault. Point of error number six is overruled.

The next point of error alleges that TEX. PENAL CODE ANN. sec. 22.021 (Vernon 1989), aggravated sexual assault, is unconstitutional. We hold and have held previously that this statute is constitutional.

The final point of error avers the trial court erred in denying Appellant a statement of facts as an indigent. The question is moot. Appellant obviously had access to the statement of facts since he caused one to be filed with this court. Thus, we do not reach this point.

### The Extraneous Offenses and Acts Issues, Revisited, Inter Alia

The record reflects that the Appellant was given his Miranda warnings after which he voluntarily gave two separate voluntary statements, being confession statements, that were relevant to the investigation that was being worked on at the time by a Mr. Belt. Mr. Belt at that time was employed by the Dayton Police Department as a deputy. Mr. Belt swore that he read the complete Miranda warnings from a card that he kept in hand. Belt also testified that he gave the complete Miranda warnings on two different occasions because of the fact that the Appellant had made two separate statements.

Also, Mr. Jannise, the record tends to reflect, had stated that he would like to give two separate statements on two different incidents involving two different victims. Furthermore, Belt testified that Jannise wanted to give these statements freely and voluntarily. Evidence exists that when the two statements were given that the Appellant was not in custody. He had been released and one strain of evidence is to the effect that Mr. Jannise freely and voluntarily came back to the Sheriff's office of his own accord. At this second visit to the Sheriff's office he was not under arrest and was not in custody.

A Jackson/Denno hearing was conducted. The hearing was full and complete. It was somewhat extended. Defense counsel inquired into the results of a polygraph test administered to the Appellant. Belt in substance said that Jannise had failed the test. But defense counsel vigorously denied this matter, contending that Jannise had passed the polygraph test. Again, these matters about the polygraph test were gone into during the Jackson/Denno hearing.

Eventually the statements of Appellant were deemed admissible. One of these statements was identified as State's Exhibit No. 2. The other statement was State's Exhibit No. 3. We conclude that the acts set out in State's Exhibits 2 and 3 were very similar.

The Court of Criminal Appeals in *Boutwell v. State*, 719 S.W.2d 164 (Tex.Crim. App.1985) approaches extraneous transactions and acts and offenses generally in this manner: that every case must be examined on its own facts, strengths and weaknesses to determine and decide whether or not the extraneous transactions are relevant to a material issue and further, whether the relevancy value outweighs any prejudicial potential effect. *Boutwell* stated that Texas, like many of her sister states, recognized a narrow exception to the general rule of non-admissibility of extraneous offenses. The rule, or rather the exception to the rule, permitted a "res gestae" exception for cases involving sexual offenses. The 1985 Court of Criminal Appeals cited *Battles v. State*, 63 Tex.Crim. 147, 140 S.W. 783 (1911). The court reasoned that acts and conduct that can be considered and were intended as an inducement to bring about the accomplishments of the accused's purposes were admissible into evidence, especially where the facts show that a father or a person standing in loco parentis or who, by any connection or relationship, would cause a young child to look to the accused for guidance, or a person who stands in such a relationship that the child would be susceptible to his wiles. Moreover, if any such person were to have sexual intercourse with a child at available opportunities; then, also such acts of intercourse were admissible. Of course, the crux of the rationale for admitting these other extraneous acts was essentially to show the circumstances that revealed light upon the charged act and explained the act in question by showing the relationship and the mutual disposition of the parties much like "res gestae" or, indeed, the context of the offense.

In *Boutwell*, the court went on to reason that the exception permitted the admission

of acts which occurred between a minor complainant and the accused so as to explain the charged or indicted act and view such an unnatural act in the light of the relationship of the parties *as well as to make the child's accusation more plausible*. Otherwise, the jury—being the triers of fact—would hear essentially an incomplete version of the charged offense as though the charged offense had occurred in a vacuum as a one time occurrence. There is a requirement that a material issue be contested as a prerequisite to the admission *of certain extraneous acts*. Here, of course, the Appellant took the position and pleaded not guilty. The State had to prove each element of the indictment beyond a reasonable doubt. Extraneous acts existing between a third party and the accused were acknowledged as being admissible to prove a relevant contested issue such as *intent or identity or motive or to rebut a defensive theory*.

The Court further approved the reasoning that it is often of importance to show the attitude between the young person and the accused and the relative size, age and strength of the persons involved and to demonstrate how one is in a position needing care and guidance of an older person. But nevertheless, if the older person has failed to perform such a proper duty and has adopted an unnatural attitude by fondling a child or by other similar acts, these acts were certainly material to the indictment returned against the Appellant.

It is important to point out that A.H. testified in this case. We think that the acts involving A.H. were certainly relevant to material issues in the case and that their relevancy value outweighs any prejudicial potential. Extraneous sexual offenses involving an accused and a third party are admissible to show "the probability of the act charged and the unnatural attention" of the defendant towards the complainant. *Boutwell, supra,* at pages 176 and 177. *See and compare Cravens v. State,* 663 S.W.2d 668 (Tex.App.—Houston [1st Dist.] 1983) reversed on prostitute impeachment point, 687 S.W.2d 748 (Tex.Crim.App.1985). The Court of Appeals reasoned that where the extraneous sexual offenses are very similar in nature to the charged offense, then the prosecutor may show a continuing scheme or course of conduct as a part of res gestae of the charged offense.

We have pointed out above certain stark similarities between the acts of the Appellant involving C.C. and A.H. We think a well-reasoned case is *Cravens, supra.* The Houston Court wrote:

> Moreover, where the extraneous sexual offenses are extremely similar in nature to the charged offense, the prosecutors may show a continuing scheme or course of conduct as part of the *res gestae* of the charged offense. *McDonald v. State,* 513 S.W.2d 44 (Tex.Cr.App.1974); *Johnston v. State,* 418 S.W.2d 522, 525–528 (Tex.Cr.App.1967); *Kester* [*v. State,* 636 S.W.2d 232 (Tex.App.1982) ], *supra,* at 233.

*See Cravens v. State,* 687 S.W.2d 748 (Tex. Crim.App.1985, *en banc* ) where the case was reversed and remanded, we perceive, on other points. In the Court of Criminal Appeals a major question or issue was whether or not a female witness may be asked on cross-examination whether she is a "common prostitute". *We have no "common prostitute" issue in the case sub judice.* Neither C.C., the eight-year old complainant victim, nor A.H., her nine-year old friend were by any stretch of the imagination "common prostitutes".

At the conclusion of the Jackson/Denno hearing, the court found from all the evidence that the proper warnings were given by Officer Jimmy Belt and that such confessions and statements of the defendant were knowingly, intelligently, and voluntarily made, inter alia. The defendant below waived all of his rights set out in the warning prescribed in TEX.CODE CRIM. PROC.ANN. art. 38.22 (Vernon 1979). The court made other salutary findings; in fact, quite a few other findings leading to the admissibility of State's Exhibit No. 2 and State's Exhibit No. 3.

We note that both sides in the trial court cited and relied to some extent on *Boutwell, supra.* Nor did either side in most

instances refer to any particular part of *Boutwell.*

Of course, it is axiomatic that the State has the burden on the indictment and the burden never shifts, and this indictment charged the accused with then and there intentionally and knowingly caused the penetration of the female sexual organ of C.C., a child who was then and there younger than fourteen years of age and not the spouse of the accused by the use of the accused's finger. And further, the Grand Jurors presented that the Appellant did then and there intentionally and knowingly cause the penetration of the anus of C.C., a child who was then and there younger than fourteen years of age and not the spouse of the defendant by the defendant's finger. The State could not anticipate, of course, how the defense would proceed; hence, the acts involving A.H. were certainly material and relevant to the intentionally and knowingly state of mind and to the element of penetration, both of C.C., a child of about eight years, as to her female sexual organ and as to her anus. We further think that the length of the sentence shows that Appellant received a fair trial. Appellant has been out on bond from a time very soon after the return of the jury's verdict. He has not been and is not now incarcerated. Moreover, it is significant to point out that the third person, A.H., was definitely involved and closely connected to the offense charged in the indictment. There exists language in *Boutwell* that extraneous sexual offenses are admissible to show the probability of the act charged as well as unnatural attention, this rule applying to a situation involving a very young minor complainant.

We do perceive that there was something like an opening of the door concerning the polygraph matter that was brought out by Appellant. There are certainly several statements made by the trial court that indicated in a proper manner that the court thought that the polygraph matter was being delved into by Appellant. Moreover, we think the court's instruction concerning the trip to Houston to take the polygraph test was effectively curative.

The court, apparently at a bench conference, thought that the state had a right to account for the time involved in the trip to Houston and back. And the court was of the further opinion that such testimony did not leave any adverse inference or any untoward innuendo. It seems a reasonable conclusion that this line of evidence concerning the trip to Houston was like a two-edged sword. If the hours and duration of time were not explained, a reasonable inference could have been drawn that there was coercion and duress involved in connection with the two statements. Fairly stated, that seems to be the thrust of the accused's theory. Hence, the trial judge ruled that the State had a right to rebut any theory of duress or coercion involving the two statements. We conclude that the trial judge did not abuse his discretion, but rather ruled correctly on a delicate and rather evenly balanced point or points of contention.

If the acts involving A.H. had not been presented to the jury the prosecution may have been faced with a situation of an argument to the effect: why take the word of this young child, imaginative child?

The record clearly reflects that both C.C. and A.H. were sleeping on the floor in the trailer on a pallet. The pallet had one or two quilts or blankets underneath to form a bed-like pallet with a blanket or two on top for warmth. As we understand the record *C.C. and A.H. were sleeping on the same pallet.*

C.C. unequivocally swore that the accused placed his finger inside of her vagina and she stated in the record that she knew what her vagina was and she also swore that she knew his finger was inside of her vagina *because she felt it and because it hurt.* C.C. further swore that this insertion lasted about 15 minutes or perhaps 10 to 15 minutes.

On a later night, C.C. testified that the accused came in, shut the door, pulled down C.C.'s pants and put his finger in her rectum. She knew what a rectum was and described the same and its usage. She said this incident lasted for about 10 to 15 minutes. The mother of C.C. testified that her

daughter experienced emotional trauma and shock as a result of these acts and that C.C. has had nightmares since the incidents. At the time of the trial C.C. engaged in sleepwalking but C.C. had never engaged in sleepwalking prior to these incidents.

This record is unusual from the standpoint of procedural tactics and certain lengthy motions addressed to the court. During these procedures an attempt was made tending to show that the defendant had passed the polygraph test; but, according to Appellant's position, the Dayton Police Officer had allegedly misrepresented the results of the polygraph test to Appellant. Further, there was an indication that certain said-to-be-official records demonstrated that the Appellant had no prior trouble with law enforcement creating a reasonable inference that this individual Appellant was a good citizen that would not have committed the charged offense.

The prosecution then had to deal with these tactics because the State could not anticipate with certainty the entirety of the defense strategies to be employed.

The defense at least tended and intended to show that C.C. had been molested by other people prior to the time of the charged offense and further there was some evidence that at least attempted to show (brought out by cross-examination by the Appellant) that C.C. was perhaps subject to having fantasies. It was also brought out in the record that C.C. may have had dreams that involved prior molestations. These matters were brought out by the able defense. Hence, it was proper to permit the State to show the acts involving A.H. and to put A.H. on the stand in an effort to meet the defendant's attack upon the credibility, the questioned emotional state, the alleged fantasies and the alleged dreams attributed to C.C. In other words, if C.C. was portrayed to the jury by the defense as being unreliable and not a credible witness, then it seems to us that for the two sides to be playing on a level playing field that the prosecution should be given the opportunity through A.H. to demon-strate to the jury that C.C. was a truthful witness as to the indictment.

In *Wiggins v. State,* 778 S.W.2d 877 (Tex.App.—Dallas 1989, pet. ref'd), a well-reasoned case, the Dallas Court of Appeals held that extraneous offenses are admissible to show the context in which the criminal act or acts occurred and also to prove scienter where intent or guilty knowledge is an essential element of the offense as it was here; also to prove malice or the state of mind of the accused; as well as to show the accused's motive; *or lastly, to refute a defensive theory or strategy.* The testimony of A.H. certainly showed the context in which the criminal acts occurred.

It certainly tended to prove scienter where intent or guilty knowledge was an essential element of the offense. Likewise, A.H.'s testimony tended to prove malice *or at least the state of mind of the accused and also to refute or rebut the defensive strategy that C.C. was perhaps merely having fantasies or merely having dreams about what the Appellant did or did not do to her.* For these reasons we hold that the acts involving A.H. were properly admissible and were correct exceptions to the general rule that extraneous offenses are inadmissible.

We conclude, also, that the probative value of these acts and of A.H.'s testimony was not outweighed by any prejudicial effect. We determine that the admission of these extraneous offenses and acts with A.H. would assist the jury, in the context of the whole record in properly resolving the contested elements as set out in the indictment.

In arriving at this conclusion we think that a consensus of Texas courts have uniformly reviewed two primary factors. Those factors are the State's need for the evidence to prove the contested issues and secondly, the similarity or remoteness of the extraneous offenses to the charged offense. Here, clearly, our record reflects that the extraneous acts or offenses were very similar to the charged offense. And clearly, under this record, the issue of remoteness is simply absent. All of these acts took place within about a three day

period. The issue of remoteness simply does not exist under the entirety of this record.

When A.H. was tendered as a witness, the defense objected that her testimony would involve violations of TEX.R.CRIM. EVID. 404(b) and would be harmful and prejudicial. However, Rule 404(b) reads in relevant part that evidence of other crimes, wrongs and acts may be admissible for such purposes as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or an accident. Under this unusual record we do not see that the prosecution violated TEX.R.CRIM. EVID. 404(b). To show how closely intertwined and intermingled these acts were, the testimony of A.H. is to this effect:

Q. Go ahead then and tell the jury what happened next?

A. Okay. Me and her fell asleep. Okay. She [C.C.] always slept real good. I can't—I'm waking up very easily. Larry walked in the room. He left the hall light on. He left the door cracked open a little bit. He walked in there. *He pulled down both of our panties.* And he—I can't recall if he touched my vagina or not. But all I know is that he did touch C.'s vagina. (Emphasis added.)

At least at the summation time, it was insisted by Appellant's able counsel that the little girl, C.C., had actually complained about two uncles allegedly said to have performed some sort of a sexual molestation against and on C.C. prior to the date of the offense on trial. Furthermore, the dream theory, that is to say, the dreams of C.C. were argued to the jury. So, the prosecution did correctly surmise that their burden in the case because of this defense stratagem would be much greater. To meet this defensive tactic a logical, reasonable basis existed for admitting into evidence the other acts including those with and against A.H.

The defense's argument diminished the testimony of children stating that several hundred years ago that ladies were convicted as witches and upon trial that girls testifying accused these females in open court of being witches. This argument went further and stated that about 49 women were hung as a result of this ruse. The argument was that "[t]hey were hallucinating, fantasizing." It seems reasonable from the whole record and specially the first part thereof that the prosecution had to anticipate this stratagem or defense from the early proceedings in the case. These defenses and stratagems then made admissible the evidence and testimony of A.H. Furthermore, the argument was made in behalf of the Appellant that the State had the power to bring evidence beyond a reasonable doubt if they had it. "They didn't do it. So I submit that you should answer that the Defendant is not guilty."

The judgment of the trial court as to the guilt/innocence phase of the case is affirmed in all things; the cause is remanded only for a new trial on the punishment phase of the case. The prior opinion is withdrawn.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

BURGESS, Justice, concurring and dissenting.

I concur in the remand on the issue of punishment, but respectfully dissent to the affirmance on the issue of guilt.

I agree with the majority's holdings regarding the additional sexual offenses involving C.C. and the outcry testimony.

The question of the admissibility of the acts between appellant and A.H. is a more complex one. Arguably, the admission of the acts against A.H. which occurred on November 29, 1985 [the indicted offense date] were admissible as "res gestae" of the acts against C.C. on that date. The majority holds the other acts are also admissible because of "res gestae" and they are part of a continuing transaction or continuous episode. Ordinarily, extraneous offenses, even sexual ones, against a third party, are not admissible. *Boutwell v. State,* 719 S.W.2d 164 (Tex.Crim.App.1985). I find no case involving extraneous offenses on consecutive dates. In *Turner v. State,* 754 S.W.2d 668 (Tex.Crim.App.1988) this court was reversed after approving the

admission of an extraneous offense against a third party which occurred one month after the indicted offense. *Turner v. State*, 716 S.W.2d 569 (Tex.App.—Beaumont, 1986). In *Alexander v. State*, 692 S.W.2d 563 (Tex.App.—Eastland 1985) the Eastland court held evidence admissible that the appellant had molested a six year old girl "at about the same time" he molested the four year old complainant. The Court of Criminal Appeals remanded the case, *Alexander*, 753 S.W.2d 401 (Tex. Crim.App.1988) so the appeals court could determine the admissibility of the extraneous offense in light of *Boutwell*.[1]

The majority holds the continuous transaction exception under TEX.R.CRIM.EVID. 404(b) applies. I disagree. While the rule does not define continuous transaction, many cases have construed the phrase "criminal episode" to include the period immediately before or after the act of sexual assault. *Burns v. State*, 728 S.W.2d 114, 116 (Tex.App.—Houston [14th Dist.] 1987, pet. ref'd) and cases cited therein. There is no evidence in this case that the children were being held against their will or under any force, threats or duress during this four day period. In fact, appellant's wife was present the entire time. Under these facts, each night's assaults were separate acts and not a continuous transaction. The extraneous offenses against A.H. were not admissible and it was error to place those before the jury. I am unable to determine beyond a reasonable doubt that the error made no contribution to the conviction or punishment. TEX. R.APP.P. 81(b).

If the extraneous acts against A.H. were not admissible, then the State should not have argued them before the jury and this too was obviously error.

I also disagree to the majority's holding concerning the omission of an extraneous offense instruction from the jury charge. Appellant was entitled to an instruction from the court limiting the jury's consideration of the extraneous offenses to those purposes for which they were admitted.

*Crawford v. State*, 696 S.W.2d 903, 907 (Tex.Crim.App.1985).

I also do not agree on the issue of the polygraph examination. The state argued below, the trial court agreed, and the majority now agrees, that under the rule of optional completeness, TEX.R.CRIM.EVID. 107, they were allowed to account for the morning time period or fully explain the purpose of the Houston trip and thus the polygraph examination was admissible. How can the state avail themselves of that rule since they initiated the testimony concerning the Houston trip?

While the rule prohibiting the results of a polygraph examination being placed in evidence is long standing and apparently quite firm, *Crawford v. State*, 617 S.W.2d 925 (Tex.Crim.App.1980), *cert. denied*, 452 U.S. 931, 101 S.Ct. 3067, 69 L.Ed.2d 431 (1981), there does not appear to be any express rule on the fact that a polygraph test was taken. In *Lee v. State*, 455 S.W.2d 316 (Tex.Crim.App.1970) there was the mention of a warning that the accused did not have to take a lie detector test. The court found the question was not designed to elicit the answer given and concluded the answer was unresponsive. They held no reversible error. In *Paredes v. State*, 368 S.W.2d 620 (Tex.Crim.App. 1963) which also involved an unresponsive answer that the defendant had been taken "to a polygraph machine", the court found no error. No evidence was presented that a test was even given much less any results, nor was any instruction requested. Likewise, there was no reversible error in *Roper v. State*, 375 S.W.2d 454 (Tex.Crim. App.1964) when there was an unresponsive answer that a test had been run and the result was not given. Each of these cases involved unresponsive answers. This is clearly not the case here. This case is more akin to *Nichols v. State*, 378 S.W.2d 335 (Tex.Crim.App.1964) where the court held the question to the prosecutrix whether she had taken a lie detector test was highly improper, clearly inadmissible and prejudicial. They further held the error could not be cured by instruction. *See also*

---

1. In an unpublished opinion, the Eastland court

reversed and remanded to the trial court.

*Banda v. State,* 727 S.W.2d 679 (Tex.App. —Austin 1987, no pet.). Using the rationale of *Nichols,* the trial court erred in admitting the evidence of the polygraph test being given.

Under my analysis, reversible error occurred during the guilt/innocence stage and thus, there should be a complete remand. While I concur in the majority's partial remand, I must respectfully file this dissent.