Dunn, Jarrod f. State















IN THE
TENTH COURT OF APPEALS
 

No. 10-95-319-CR

     JARROD DUNN,
                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                              Appellee
 
 
From the 82nd District Court
Robertson County, Texas
Trial Court # 95-06-15,768-CR
                                                                                                                 

O P I N I O N
                                                                                                                 

      Appellant was charged in a three-count indictment with the offense of Aggravated Sexual
Assault of a Child on or about the 8th day of April 1995. The first count alleged penetration of the
female sexual organ of the child-victim, to-wit, Chastity Lowe, by Appellant's finger. The second
count alleged penetration of the anus of Chastity Lowe by Appellant's sexual organ. Count three
alleged that Appellant had caused the mouth of the child-victim to contact Appellant's sexual organ. 
The third and final count was abandoned by the State prior to submission of the case to the jury.
      Trial was to a jury on the first two counts which resulted in finding Appellant guilty. 
Afterwards the same jury assessed Appellant's punishment at life in the Texas Department of
Criminal Justice, Institutional Division and, in addition thereto, a $10,000 fine, from all of which
Appellant appeals. We affirm.
      Appellant asserts one point of error with nine subdivisions, to-wit, that the trial court
reversibly erred in allowing into evidence extraneous offenses against other alleged victims of
sexual assault. Basically, the complained-of testimony concerns and consists of sexual assaults
assertedly made by Appellant against his three stepdaughters, Mindy and Amanda Lowe, then each 
ten-years-of-age, and Jordan Lowe, then five-years-of-age. Chastity Lowe, the stepdaughter
alleged in the indictment, at the time of trial was eight-years-of-age.
      The nine subdivisions under Appellant's sole and only point of error are directed at the
following:
      A.  Testimony of Donna Ondruch, Jordan and Chastity's foster mother, concerning sexually
explicit pictures drawn by Jordan.
      B.  The testimony of Dr. Joel Vavich concerning the examination of Amanda Lowe.
      C.  Medical records of Amanda Lowe from St. Joseph Hospital in Bryan, Texas.
      D.  The testimony of Mindy Lowe.
      E.  The testimony of Dr. Robin Williams.
      F.   The admission of photos depicting the injuries as a result of the sexual assault on Mindy
Lowe.
      G.  The admission of photos depicting the injuries as a result of the sexual assault on Jordan
Lowe.
      H.  The testimony of Amanda Lowe.
      I.   The testimony of Jordan Lowe.
      The above nine sub-points can be addressed under three main topics or categories as follows: 
(1) Direct evidence from eyewitness-victims (pertinent to Appellant's sub-points D, H, and I); (2)
Medical treatment or examination evidence (pertinent to Appellant's sub-points B, C, E, F, and G);
and (3) the testimony given by the victim's foster-parent regarding her observations of the behavior
symptoms exhibited by the child-victim's youngest sister, Jordan Lowe, in some pictures of
Appellant, the girls' mother, and the four Lowe girls (pertinent to sub-point A).
      This case was one involving the aggravated sexual assault of an eight-year-old girl by
Appellant, her own stepfather. Chastity Lowe was not a victim in just a single transaction. 
Significantly, the evidence showed that there was a pattern of continuous abuse on an almost daily
basis since the marriage of Appellant and the victim's mother, which was a period of more than one
year. Chastity Lowe was not the only person present, other than Appellant, when the offenses
occurred. The other persons present were not just eye-witnesses to the aggravated-sexual assault
on the child-victim. The others present were themselves, simultaneously a part of the same
criminal transaction, victimized by Appellant. Those others were Chastity Lowe's sisters, same
being the ten-year-old twins, Mindy and Amanda Lowe, and five-year-old Jordan Lowe.
      We first discuss the direct evidence complained-of by Appellant, pertinent to Appellant's sub-points D, H, and I. These three sisters of the child-victim, Amanda, Mindy, and Jordan Lowe,
were each eyewitnesses and co-victims who testified at the trial. There is a common theme running
through the testimony of each of the three little girls as follows: each was present when Appellant
hurt and did bad things to Chastity, the eight-year-old-child-victim; that Appellant did the same or
similar bad things to hurt her and her other sisters during that particular incident testified about;
some of the incidents described by the girls were contemporaneous with the offense charged as
having occurred "on or about the 8th day of April 1995," and others were part of Appellant's plan,
scheme, or modus operandi. The ones that were contemporaneous were admissible in evidence as
res gestae, since they were of the "same transaction"; therefore they were in truth not "extraneous
offenses" as argued by Appellant. Other events, which may have occurred on dates other than
April 8, 1995, were admissible to show intent, or a common plan, or scheme of Appellant.
      Both types of evidence were intertwined with the charged offense. Manifestly, it would be
impossible to instruct the child-witnesses to omit those parts of the transaction in which such child
was involved from such witness's testimony regarding the assault on the child-victim. An example
of this type of testimony is the incident wherein the child victim and one of the twins were forced
to act out a scene from a pornographic video which Appellant made the four young sisters watch
with him while Appellant was at the same time engaging in sexual intercourse with the other twin.
      Appellant contended throughout the case that he was not the perpetrator who did the things he
was accused of, but that these acts were done by an adult male by the name of Ricky Johnson, a
previous paramour of the child-victims’ mother, or that these acts were done by one or more of the
girls themselves. This "common plan or scheme" evidence was admissible on the issue of identity
of the offender by showing his modus operandi. More specifically, Appellant used all four of these
little girls as his sex slaves, as performers in the expression of his sexual fantasies. Part of his
modus operandi was that he performed with more than one victim at a time, as shown in the
eyewitness evidence about which Appellant complains.
      The evidence clearly shows that the little girls were familiar with Appellant's modus operandi,
because they knew what to expect from Appellant every time he was left alone with them, whether
it was when he was driving in the car with them, watching a video in the living room, or sleeping
in the bedroom. Appellant would rub his finger through the child-victim's "bad spot," or touch
his victims on their private parts with his hand sometimes on the outside and sometimes on the
inside, and "touch them where they are not supposed to be touched." Appellant would drive his
vehicle with the four girls as passengers and, while driving, would "take (the child-victim's) clothes
off and make her get on him and his private spot touch her in her front part," all while he was
driving, and he would make the child-witness and her sisters, including the child victim, "get on
him."
      The record is replete with evidence given by the four little girls of sordid details of sexual acts
of various kinds done by Appellant to the little girls, all of which show Appellant's modus
operandi. A lot of it would be repetitive to that stated herein, and all show evidence of a common
plan or scheme of Appellant, and speaks to the issue of the identity of the perpetrator. Nobody but
Appellant had the kind of extended and repeated access to these four little girls which would be
required to carry out this scheme of conduct. Indeed, Appellant's wife testified that she was finally
convinced that only Appellant could have done these things to her children because the girls (and
in particular Jordan) had not been around anyone else during the time period when the acts toward
the four girls occurred. Appellant himself testified that he was the male figure in the lives of these
four sisters during the sixteen-month period between January of 1994 through April 1995, the time
period when the instant offense and the related offenses occurred. Appellant also revealed that he
was the only one with access to the four girls except for two instances when he and the girls'
mother separated. Evidence showed that during their second separation the mother left all four
girls with Appellant and went to work in Waco.
      Moreover, Appellant’s defensive theory that perpetrator was not him, but was Ricky Johnson,
is rebutted by the fact that Jordan Lowe (five-years-old at the time in question) was not even born
at the time Ricky Johnson could have ever had access to the children. The evidence is clear that
any inappropriate conduct on the part of Ricky Johnson did not involve penetration but merely
inappropriate touching.
      We now move to a discussion of the Medical Treatment/Examination evidence pertinent to
Appellant's sub-point B, C, E, F, and G.
      The medical evidence in the form of physician's testimony, medical records and photographs
taken during the medical examination, regarding each of the four girls, was necessary to
corroborate their testimony about the abusive patterns, including by what means, to which parts 
of their bodies, and when and to what degree of frequency said assaults occurred. The evidence 
in this record is overwhelming to the effect that these girls were definitely the victims of sexual
abuse; that they were abused within the last year to a year-and-a-half (not five years ago); these
girls were not just abused in a single incident; that these girls all provided significant patient
histories regarding how and by whom they were assaulted, which were consistent with injuries
discovered by the doctors in their examinations. The inescapable conclusion from the medical
experts was that all of these girls had been chronically, repeatedly, and brutally assaulted in a
sexual manner during the preceding year-and-a-half, and that the perpetrator was the Appellant. 
Not one of the girls ever wavered from her initial statement that Appellant was the only perpetrator
who did these bad things to her and her sisters over and over again. Over the course of time since
the removal of the girls to places of safety away from Appellant, the girls had made additional
outcries to non-offending adults in which they gave more details and told of further abuse by
Appellant, but the girls never stated that anyone other than Appellant had committed these offenses.
      Another defensive theory urged by Appellant was that the four sisters were fabricating this
entire story out of rebellion against their stepfather since he was the first disciplining authority in
their lives. However, Appellant conceded that he and his wife had ceased the use of corporal
punishment, and the discipline measures used were no more severe than making them stand in a
corner for five to fifteen minutes. Moreover, if the girls had been making up allegations, they
would not have been able to sustain this level of consistency over such a long period of time and
against the hardships they had to endure after all these sexual assaults came to light. Additionally,
there was testimony from several witnesses for both the State and the defense that indicated
behavioral symptoms which the expert witness, Dr. Tom Edwards (a child psychologist) identified
as characteristics of sexually abused children. These behaviors included the nature of the outcries
such as they grew more detailed over time, why revelation was delayed, and the sexual “acting out”
phenomena. Thus, the relevance, rebuttal value, and necessity of the admission of the extraneous
offenses showing a common plan or scheme on the part of Appellant are clearly apparent.
      We now discuss the evidence of behavioral symptoms pertinent to Appellant’s Sub-point A. 
Appellant complains that the evidence of Ms. Donna Ondruch (Jordan and Chastity’s foster-mother)
was improperly admitted into evidence, which involved drawings made by Jordan while the two
children were in the foster home. Ms. Ondruch had observed Jordan drawing them and had been
told by the five-year-old girl what these drawings depicted. The drawings depicted genitalia on
family members, including Appellant.
      Dr. Tom Edwards, the child psychologist, testified that such drawings, while not seen in a
normal five-year-old child who had not been abused and molested, would be common for a child
who had been abused and molested. According to his testimony, the pictures are clear
circumstantial evidence that Jordan had been sexually abused. According to Dr. Edwards, such
evidence of psychological trauma or injury is analogous to medical evidence of physical or external
injuries.
      These pictures are corroborations of the testimony of the four little girls, and are relevant and
admissible as res gestae of the common plan or scheme evidence which tended to show the identity
of the perpetrator and therefore admissible to corroborate the direct evidence in the case.
      The depiction of genitalia rebuts the defense theory that toys or Barbie doll legs had been used
by the child victim and/or her three sisters to inflict the injuries suffered by the little girls. If
Appellant had had no improper contact then, how did this five-year-old child gain the information
to draw a picture depicting Appellant with a penis?
      Evidence of other crimes, wrongs, or acts may be admissible to demonstrate proof of motive,
opportunity, intent, preparation or plan, knowledge, identity, absence of mistake or absence of
accident. Tex. R. Crim. Evid. 404(b); Jannise v. State, 789 S.W.2d 623, 627 (Tex.
App.—Beaumont 1990, pet. ref’d). Appellant does not deny that the child-victim, Chastity Lowe
and her three testifying sisters were sexually abused. Appellant himself admitted that the fact of
the girls’ abuse was obvious, that he was not saying that the girls had not been abused, and that the
photographs and the evidence from the doctors showed that the girls had been abused. In closing
argument, Appellant’s counsel reiterated that the only element of proof which they contested was
the State’s contention that Appellant was the one who committed the offense, that is to say, the
identity of the perpetrator. This was the theme urged by Appellant throughout the trial. This being
so, it was incumbent on the State to present the extraneous matters complained of as a logical and
necessary rebuttal of this major defensive theory. See Waddell v. State, 873 S.W.2d 130, 136
(Tex. App.—Beaumont 1994, pet. ref’d). Not only do the extraneous offenses establish Appellant’s
identity as the abuser of the girls, they demonstrate that Appellant had the opportunity and 
preparation or planning to commit this assault. Tex. R. Crim. Evid. 404(b); Jannise, 789 S.W.2d
at 627. 
      Additionally, offenses do not occur in a vacuum and the jury reasonably ought to have the
benefit of the immediate, intertwined, intermingled surrounding circumstances. Jannise, 789
S.W.2d at 626-27. In the case at bar, the sexual acts against Chastity Lowe and her three sisters
are so closely related, intertwined, and intermingled that to attempt to separate them would be
arbitrary and unrealistic. The jury is entitled to have at least a fairly complete narrative in order
to reach and return a just verdict. Id. at 627. Thus, these offenses arise from the same transactions
for which Appellant was charged and are admissible to show the circumstances surrounding the
assaults perpetrated on the child-victim.
      For the reasons hereinabove stated, we overrule Appellant’s contentions under his sole point
of error and affirm the judgment of the trial court.
 
                                                                               JOHN A. JAMES, JR.
                                                                               Justice (Retired)
 
Before Chief Justice Davis,
      Justice Cummings, and
      Justice James (Retired)
Affirmed
Opinion delivered and filed July 16, 1997.
Do not publish